**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | **Case No. 1:22-CR-00267-DLF** |
| | : | |
| **JAMES ROBINSON,** | : | |
| **Defendant.** | : | |

**<u>DEFENDANT'S MEMORANDUM IN AID OF SENTENCING</u>**

COMES NOW ATTORNEY, Allen H. Orenberg, to respectfully submit this Memorandum in Aid of Sentencing on behalf of Mr. James Robinson. There can be no dispute that the Court has a duty to deliver a sentence which are not greater than necessary to comply with sentencing purposes. *See* 18 U.S.C. §3553(a).

When fashioning an appropriate sentence, Mr. Robinson requests that the Court impose a sentence of twelve (12) of months unsupervised probation coupled with community service hours, considering:

(1)     His lack of preparation or planning prior to January 6, 2021, to be part of the U.S. Capitol breach event;

(2)     His immediate cooperation with law enforcement officers when arrested, as well as his ongoing cooperation and willingness to resolve his case at the earliest opportunity; and

(3)     To avoid an unwarranted sentencing disparity among similarly situated January 6th defendants.

Such a sentence is "sufficient, but not greater than necessary" to address the sentencing factors and goals set forth in Title 18 U.S.C. § 3553(a).

## I.     **CASE BACKGROUND**

On July 29, 2022, a criminal complaint [1] was filed in U.S. District Court for the District of Columbia charging Mr. James Robinson, with four (4) misdemeanor offenses related to his conduct on January 6, 2021.[1] On August 5, 2022, he voluntarily surrendered to authorities in Fort Washington, PA, then he was presented in the U.S. District Court for the Eastern District of Pennsylvania. On August 8, 2022, an Information issued charging the same four misdemeanors. [6] On August 16, 2023 he was presented in this Court and he was released by U.S. Magistrate Judge Robin M. Meriweather on personal recognizance with standard conditions. [9]

On February 7, 2023, Mr. Robinson appeared (VTC) before U.S. District Judge Dabney L. Friedrich and the Court accepted a voluntary guilty plea as to Count Four of the Information: 40 U.S.C. § 5401(e)(2)(G) (Parading, Demonstrating or Picketing in a Capitol Building). This particular statute carries a possible penalty of up to six (6) months imprisonment, five (5) years of probation and a fine of up to $5,000.00. As a Class B misdemeanor, the U.S. Sentencing Guidelines do not apply. As part of the plea agreement, [66] Mr. Robinson has agreed to $500.00 restitution and a $10.00 special assessment.

---

[1] (Count 1) 18 U.S.C. § 1752(a)(1) (Entering or Remaining in a Restricted Building or Grounds), (Count 2) 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds), (Count 3) 40 U.S.C. § 5401(e)(2)(D) (Disorderly Conduct in a Capitol Building), and (Count 4) 40 U.S.C. § 5401(e)(2)(G) (Parading, Demonstrating or Picketing in a Capitol Building).

It is counsel's understanding that Mr. Robinson is in compliance with all of his conditions of release.

The USPO Sentencing Recommendation [28] proposes a period of probation of 60 months. Sentencing is scheduled for May 9, at 11:00 a.m.

## II.     LEGAL STANDARD

Section 3553 of Title 18 of the United States Code enumerates certain factors a district court is to consider when sentencing a defendant who has been convicted of a federal offense. Primarily, the court shall consider the nature and circumstances of the offense and the history and characteristics of the defendant. *See* 18 U.S.C. § 3553(a). The court shall also consider the need for the sentence imposed to: reflect the seriousness of the offense, promote respect for the law, and provide just punishment; afford adequate deterrence to criminal conduct; protect the public from further crimes of the defendant; and provide defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *Id.* at § 3553(a)(2)(A-D). 18 U.S.C. § 3553(a) sets forth seven factors which a sentencing court must consider:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed to reflect the four primary purposes of sentencing, i.e., retribution, deterrence, incapacitation, and rehabilitation;
> (3) the kinds of sentences available;
> (4) the sentencing range established through application of the sentencing guidelines and the types of sentences available under the guidelines;
> (5)) any relevant "policy statements" promulgated by the Commission;
> (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

**A.      Nature and Circumstances Of The Offense**

Mr. Robinson, who lives in Schwenksville, PA, traveled alone to Washington, D.C., on January 6, 2021. He joined the protest on the East Side of the U.S. Capitol Building at approximately 2:40 p.m. Thereafter he entered the Capitol Building at through the Columbus Doors. He then left the building at approximately 42 minutes later, at 3:14 p.m.

After watching video clips of January 6th after-the-fact, he regrets that he was any part of it of the events, including any interactions with police officer(s). Mr. Robinson was not part of a group which either organized activities on January 6th, nor does he subscribe to any far-right political views. He had no idea where he was while he was in the Capitol building, he was only inside the building for less than one hour, and to this day could not navigate the building.

His actions within the U.S. Capitol have been tracked on the CCTV footage and this demonstrates that while unlawfully present in the Capitol with no excuse, he did not destroy property or steal property. He did have a brief encounter with a police officer. but he is not charged with an assault or any crime of violence. Furthermore, Mr. Robinson did not exercise managerial authority over any other participant and, thus, he was average or minor participant.

**B.      Post-January 6, 2021**

To his credit, Mr. Robinson has fully acknowledged his misconduct. He pled guilty at a pre-trial stage in the proceedings thus saving valuable judicial resources, as well as the resources of the U.S. Attorney's Office.

It is noted "During the pre-sentence interview, the defendant agreed with the conduct described in the Statement of Offense as presented to the Court prior to his guilty plea." *See* PSR [27] ¶19 .

Mr. Robinson has endured life-long damage to his reputation. He reports he has been the subject of a number of media accounts lumping him with others that were there on January 6, 2021. None of this will be erased from the internet – it may be there forever. His personal character is forever besmirched, and his family will also suffer since they are inextricably intertwined with him. (as more fully **described below)**

C.     **History and Personal Characteristics of Mr. Robinson**

Mr. Robinson (age 61) was born in Baltimore Maryland. He is a permanent Resident of the United States. His father (now deceased) served in World War II. His mother passed way in 2003. He has a brother and a sister, and with both he has good relationships. He reports he had a typical childhood, never lacking for anything.

Mr. Robinson is twice divorced and has no children. He is now in a significant relationship. He has never suffered from mental health issues or disease and, generally, he is in good overall health. He rarely drinks alcohol and he reports occasional use of marijuana. He has a B.A. in history from Millersville University (PA). He is currently employed as a machine operator.

He has no criminal history. *See* PSR [27] ¶ 22.

The following persons have submitted letters in support of Mr. Robinson:

1.      Mr. Jon Collins

2.      Minister Randy Johnson

3.      Ms. Lynn Tolly

4.      Mr. Rod Proskitt

5.      Mr. Marco DiScipio

He qualified for court-appointed counsel thus, any extraordinary fine imposed by the Court will be a heavy burden on him. All of the above personal factors, as well as his law abiding life and his post arrest behavior, demonstrate he is capable of being a productive citizen, which the Court can rely on as a basis to sentence him to a short term of unsupervised probation when it considers the §3553 factors.

### D.      General Deterrence – 18 U.S.C. § 3553(a)(2)(B) – To Adequately Deter Others From Criminal Conduct

The purposes of sentencing include punishment, rehabilitation, general deterrence, specific deterrence, and incapacitation. In this case, there appears to be no need for incapacitation, specific deterrence or rehabilitation. Mr. Robinson has no criminal history. The public will be adequately deterred by the sentences meted out against those who perpetrated the violence and mayhem at the U.S. Capitol and the negative publicity and collateral consequences attendant to even a misdemeanor conviction for those involved. Those who would not be deterred by these consequences are likely not deterrable. And, a sentence that leaves a family impoverished when other reasonable alternatives exist would not promote respect for the law. Indeed, unnecessarily harsh sentences imposed upon those who were

less culpable will not encourage respect for the law or promote just punishment, but are likely to be counterproductive, and labeled as political posturing. A period of probation does constitute punishment and will deter others as one's liberty interests are curtailed by travel restrictions, reporting obligations, and limitations on one's personal freedoms. The National Institute of Justice, Department of Justice, issued a summary of the current state of empirical research stating that "prison sentences are unlikely to deter future crime," and "increasing the severity of punishment does little to deter crime." U.S. Dep't of Justice, Office of Justice Programs, Nat'l Inst. of Justice, *Five Things to Know About Deterrence* (July 2014) (relying on Daniel S. Nagin, *Deterrence in the Twenty-First Century*, 42 Crime & Justice in America 199 (2013)), available at https://ncjrs.gov/pdffiles1/njj/247350.pdf.

### E.     Specific Deterrence – 18 U.S.C. § 3553(a)(2)(C) – To Protect the Public From Further Crimes Of The Defendant

Mr. Robinson's likelihood of recidivism is very low. He has expressed genuine remorse and contrition, has cooperated fully with law enforcement and he accepted the first plea offer tendered with no hesitation. His acceptance of responsibility was complete and without reservation. Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, *Purposes and Functions of Sentencing,* 34 Crime & Just. 1, 28 (2006)" Three National Academy of Science panels… reached that conclusion, as has every major survey of evidence." *Id.*; See *also* Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and*

*Sentence Severity: An Analysis of Recent Research (1999),* summary available at http://members.lycos.co.uk/lawnet/SENTENCE.PDF. The report, commissioned by the British Home Office, examined penalties in the United States as well as several European Countries. *Id*. at 1. It examined the effects of changes to both the certainty and severity of punishment. *Id*. While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates…were not sufficient to achieve statistical significance." *Id*. at 2. The report concluded that the "studies reviewed do not provide a basis for inferring that increasing the severity of sentences is capable of enhancing deterrent effects." *Id.* at 1. Given Mr. Robinson age (61), and other issues consistent with what is mentioned above, the likelihood of Mr. Robinson  ever re-offending is as close to zero as one might come. A punishment of any jail time in this case is going to have the exact opposite effect than what is in the interest of justice. The alternatives to incarceration make financial sense, conserve bed space for individuals from which society would need greater protection and would serve the ends of justice.

A probationary sentence is further justified in this case when considering his background and history, as well as his sincere and complete remorse, his early and consistent acceptance of responsibility and the lack of a need to further deter him.

### IV.    <u>The Need To Avoid Unwarranted Sentence Disparities</u>

Mr. Robinson urges this Court to readily contrast his behavior from the egregious conduct of other January 6th defendants. As noted herein, the defense is not aware of any evidence that his entry into the U.S. Capitol building was

preplanned or coordinated with any extremist or organized group. Although he encountered a police officer, he did not incite others to commit acts of violence or destruction. (And he has not been charged with an assault or any crime of violence.) He did not destroy or steal any property from the U.S. Capitol building. Fifth, based on the Government's own investigation, he remained in a limited part of the building. Mr. Robinson recalls that while he was inside the building, he encouraged at least two other persons not to inflict physical damage to the contents or the building itself. Furthermore, Mr. Robinson recalls that when reviewing a video during an interview with FBI agent Elizabeth Becker, it was acknowledged he assisted/prevented someone from falling and be trampled by the crowd.[2] The defense is not aware of any evidence suggesting that Mr. Robinson entered into the Senate or House Chambers, or any other area other than the Rotunda.

If this Court were to impose a sentence greater than a probationary term, community service, and restitution, it would create an unwarranted sentencing disparity compared to similar cases that have already gone to sentencing in this Court. The following cases are a sampling of January 6th U.S. Capitol breach cases, where the defendant(s) plead to 40 U.S.C. § 5104(e)(2)(G), which resulted in no active prison time:

- *United States v. Eliel Rosa*, 21-cr-00068 (TNM) (Oct.12, 2021) (Sentenced to 12 months probation – Mr. Rosa accepted responsibility early on, did not pre-plan or coordinate activities, and did not go far into the U.S. Capital building.)

---

[2] Conducted on May 5, 2022, in the presence of Mr. Robinson's former counsel.

- *United States v. Valerie Ehrke*, 21-cr-00097 (PLF) (Sept. 17, 2021) (Sentenced to 36 months probation. She was inside the Capital Building and part of a crowd, but was in the back and was pushed out fairly quickly)

- *United States v. Jordan Stotts,* 21-cr-00272 (TJK) (Nov. 9, 2021) (Sentenced to 24 months probation where defendant shouted at MPD officers and posted non-remorseful comments following January 6th.)

- *United States v. Julia Sizer,* 21-cr-00621-CRC (Government requested 2 months home detention however, the Court imposed 24 months probation. She was inside the Capitol Building for approximately 2 minutes and she recorded events on her cell-phone.)

- *United States v. Jacob Lewis,* 21-cr-0100-CRC (Government requested 2 months home detention however, the Court imposed 12 months probation. Mr. Lewis was inside the Capitol Building for approximately 7 minutes.)

- *United States v. Traci Sunstrum,* 21-cr-00652-CRC (Government requested 14 days incarceration however, the Court imposed 30 days home detention. She was inside the Capitol Building for approximately 20 minutes and on 1/6/2021 she posted a brief message as a "citizen journalist.")

- *United States v. Bryan Ivey,* 21-cr-00267-CRC (Government requested 14 days imprisonment however, the Court imposed 60 days home detention. He was inside the Capitol Building for approximately 35 minutes, wave rioters inside, and took multiple videos, which he later deleted.)

- *United States v. Eric Von Bernewitz,* 21-cr-00307-CRC (Government requested 14 days imprisonment, however the Court imposed 60 days home detention. He (and his brother) was inside the Capitol Building for less than 15 minutes.)

- *United States v. Gary Edwards,* 21-cr-00366-JEB (Government requested 14 days imprisonment however this Court imposed 12 months probation. Mr. Edwards was inside the Capitol building for approximately 24 minutes.)

- *United States v. Douglas F. Macrae,* 22-cr-00181-JEB (Government requested 4 months home detention however, this Court imposed 12 months probation. Mr. Macrae was in the Capital building for approximately 3 minutes and he posted comments on social media.)

-10-

- *United States v. Caleb Jones,* 21-cr-00321-JEB (Government requested 36 months probation with 3 months of home detention however, this Court imposed 24 months probation with 2 months home confinement. Mr. Jones was inside the Capitol building for a short period of time)

- *United States v. Paula Conlon*, 22-171-JMC (Government requested 60 days imprisonment, however the Court imposed 12 months probation. Ms. Conlon was inside the Capitol building for approximately 3 minutes, and she posted comments & photos to social media.)

- *United States v. Bryan Bustos*, 22-16-CJN (Mr. Bustos was inside the Capitol Building for approximately 11 minutes. Government requested 14 days incarceration, the Court impose 24 months of probation.)

None of this is to suggest that any of these examples, for a conviction of 40 U.S.C. § 5104(e)(2)(G), should have received a sentence of incarceration / home detention as many Judges of this district court have sentenced numerous January 6ᵗʰ misdemeanor cases (for 40 U.S.C. § 5104(e)(2)(G)) to probation or home detention or just imposed a fine.

Mr. Robinson was far more cooperative with law enforcement, did not attempt to hide any evidence, and he has not publicly blamed another group for the violence that day. All told, the facts of the offense conduct and characteristics of the defendants who garnered incarceration were starkly different than Mr. Robinson's conduct on January 6, 2021, as well as his personal characteristics.

Also, as noted herein and in the PSR, the United States Sentencing Guidelines do not apply in this case as his conviction is a Class B Misdemeanor.

## **CONCLUSION**

Mr. Robinson respectfully asks the Court to impose a short term of unsupervised probation of twelve (12) months with community service hours largely because: (1) His lack of preparation or planning prior to January 6, 2021, to be part

of the U.S. Capitol breach event, (2) his immediate cooperation with law enforcement officers when arrested, as well as his ongoing cooperation and willingness to resolve his case at the earliest opportunity, and, (3) to avoid an unwarranted sentencing disparity among similarly situated January 6th defendants.

In the alternative, we ask the Court consider a short non-custodial sentence with a restriction that he remain in his home except for work and excused absences to go to church and medical appointments. In the event the Court finds a period of incarceration warranted: 1) Mr. Robinson asks that he be allowed to serve it on weekends, which is what the Court did in *United States v. Johnny Taylor,* 15-cr-76 (BAH),[3] or (2) a Judicial recommendation to the BOP for FCI Allenwood Low.

Imposition of a fine is discretionary, and, defendant respectfully submits, should not be ordered to pay a fine in this case. Defendant's financial condition (discussed herein) is such that he cannot pay any significant (additional) fine. He will, of course, remit the agreed upon $500.00 restitution and the $10.00 special assessment.

For the foregoing reasons and such other reasons that may appear just and proper, James Robinson respectfully asks this Court to fashion a sentence of unsupervised twelve (12) months probation, with community service hours. This sentence is "sufficient but not greater than necessary" as required by 18 U.S.C. §3553(a). It would be a sentence in the best tradition of federal judicial discretion,

---

[3]    Furthermore, there is a remarkable cost savings to the taxpayers of the United States if the Court imposes a period of probation rather than a term of incarceration. It is counsel's understanding that the monthly cost of imprisonment is $3,688.00, $2,980.00 for community confinement, and $371.00 monthly for supervision. *See* PSR [27] ¶ 63.

which will consider Mr. Robinson as an individual and account for his unique failings and positive attributes that, in the words of Justice Kennedy "sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Rita v. United States*, 551 U.S. at 364, (Stevens, J. concurring), *citing Koon v. United States*, 116 S.Ct. 2053 (1996).

Respectfully submitted,

_____
Allen H. Orenberg, Bar No. 395519
The Orenberg Law Firm, P.C.
12505 Park Potomac Avenue, 6th Floor
Potomac, Maryland 20854
Tel. No. 301-984-8005
Cell Phone No. 301-807-3847
Fax No. 301-984-8008
aorenberg@orenberglaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2023, I caused a copy of the foregoing Memorandum in Aid of Sentencing (with exhibits) submitted on behalf of Mr. James Robinson, to be served by CM/ECF to case registered parties.

_____
Allen H. Orenberg